```
           UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**UNITED STATES OF AMERICA,**

v.                              Criminal Action No. 2:20-cr-00004

**KALI EUSI YOUNG**

### MEMORANDUM OPINION AND ORDER

Pending is a "Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)," filed by defendant on January 20, 2023, in which he seeks compassionate release. ECF 39.

On January 29, 2020, defendant pled guilty to one violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). ECF 21 and ECF 22. The court sentenced defendant to 96 months imprisonment, to be followed by three years of supervised release. ECF 30.

In defendant's motion he seeks "a reduction of his sentence to time served with a period of home confinement" pursuant to the provisions of § 3582(c)(1)(A)(i). ECF 39 at 1. The government has filed a response in opposition to defendant's request on June 20, 2023. ECF 45.

Generally, once a court has imposed a term of imprisonment, it lacks the authority to modify the sentence. 18 U.S.C. § 3582(c).  In December 2018, Congress enacted the First Step Act, which amended 18 U.S.C. § 3582 and enabled courts to reduce a term of imprisonment under certain circumstances.  First Step Act of 2018, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239.

As amended, § 3582 provides that after satisfying an administrative exhaustion requirement,[1] courts may reduce a sentence if (1) "extraordinary and compelling reasons warrant such a reduction," (2) "reduction is consistent with the applicable policy statements issued by the Sentencing Commission," and (3) release is consistent with the factors listed under 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A).

The Fourth Circuit has noted that at the current time there are no "applicable policy statements issued by the Sentencing Commission."  See United States v. McCoy, 981 F.3d 271, 283 (4th Cir. 2020).  Accordingly, the court is not limited by an enumerated list of reasons that warrant relief and "enjoy[s] broad discretion in conducting this analysis."  United

---

[1] Defendant has provided documentation showing he has satisfied the administrative exhaustion requirement by requesting compassionate release from the warden of his prison facility on September 16, 2022.  See ECF 39-1, Ex. A.

States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021), cert. denied, 142 S. Ct. 383 (2021); but see United States v. Ferguson, 55 F.4th 262 (4th Cir. 2022) (finding a defendant cannot challenge the validity of his conviction or sentence through a motion for compassionate release). However, rehabilitation may not on its own, serve as a basis for compassionate release. McCoy, 981 F.3d at 286, n. 9; United States v. Davis, No. 21-6960, 2022 WL 127900 (4th Cir. Jan. 13, 2022); 28 U.S.C. § 944(t).

Defendant makes three arguments in support of his request for compassionate release. First, he claims his medical conditions, which include three recent "life changing" diagnoses are "serious medical conditions" warranting compassionate release. ECF 39 at 3-4. He also argues that these medical conditions make him vulnerable to severe complications should he contract COVID-19. Id. Next, defendant generally avers his efforts at rehabilitation warrant compassionate release. Id. at 4-7. Finally, defendant asserts compassionate release is appropriate because of his family circumstances. Id. at 5. The government has filed a thorough response. ECF 45.

Although not binding on the court, U.S.S.G. § 1B1.13 n. 1(A),[2] provides that the medical condition of a defendant may support compassionate release if the defendant is suffering from a terminal illness or the condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

Defendant lists the following as medical conditions he suffers and which he believes support his claim for compassionate release: (1) high cholesterol, (2) sleep apnea, (3) pre-diabetes, (4) MCL tear in left knee, (5) narrowness in vertebra which causes recurring numbness, (6) arthritis in both knees, and (7) obesity. ECF 39 at 2-3.

In opposition, the government contends defendant's medical records do not suggest that he suffers from a "terminal illness" nor have his medical conditions "substantially diminish[ed] the ability of the defendant to provide self-care within the environment of [the prison]." ECF 45 at 3. Regarding defendant's pre-diabetes and obesity, the government

---

[2] The court recognizes that in McCoy, the Fourth Circuit found U.S.S.G. § 1B1.13 "does not apply to defendant-filed motions under § 3582(c)(1)(A);" however, § 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d 271 at 282, n. 7.

argues such conditions are "not terminal, nor do they substantially limit [defendant's] ability to self-ambulate or care for himself." Id. at 9. As for defendant's sleep apnea, the government highlights that defendant has undergone a sleep study which resulted in him being prescribed a breathing machine. Id. On his diagnoses of high cholesterol and pre-diabetes, the government notes defendant's care provider recommended medication, which defendant declined. Id. at 9-10. An orthopedic surgery consultation has been ordered so that defendant's MCL tear in his left knee and arthritis may be treated. Id. at 10. Finally, care providers have ordered radiology and neurology consultations to examine defendant's narrowing vertebrae and numbness. Id.

The court finds defendant has not shown his medical conditions constitute "extraordinary and compelling" reasons warranting compassionate release, as he is not suffering from a terminal illness, is receiving adequate care from the Bureau of Prisons ("BOP") and is fully capable of caring for himself while in BOP custody.

Next, the court finds defendant's medical conditions along with the risk of experiencing serious illness if he should contract COVID-19, does not establish "extraordinary and compelling" reasons warranting compassionate release.

5

Courts have found "extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to [COVID-19] and a particularized risk of contracting the disease at his prison facility." United States v. Feiling, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020); see United States v. High, 997 F.3d 181, 185 (4th Cir. 2021) ("The underlying arguments for release from prison based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical conditions increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19.").

Even if the court were to conclude that defendant's underlying medical conditions may increase his risk of experiencing serious illness should he contract COVID-19, the court finds he has failed to establish that he now has a particularized risk of contracting COVID-19 at his prison facility.

Defendant is currently incarcerated at FTC Oklahoma City. Find an Inmate, BOP, https://www.bop.gov/inmateloc/ (last visited August 11, 2023). Data from the BOP indicates the facility, as of August 11, 2023, has between 0 and 7 confirmed open cases of COVID-19 among its inmate population of some 1,080

6

and none among its staff. See Inmate COVID-19 Data, BOP, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited August 11, 2023); BOP COVID-19 Statistics, BOP, https://www.bop.gov/coronavirus/covid19_statistics.html (last visited August 11, 2023). As of August 11, 2023, FTC Oklahoma City is operating at a COVID-19 Operational Level of 1. FTC Oklahoma City, BOP, https://www.bop.gov/locations/institutions/okl/ (last visited August 11, 2023). An Operational Level of 1 indicates that the facility is following "normal" operational procedures. COVID-19 Modified Operations Plan & Matrix, BOP https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp#about_levels (last visited August 11, 2023). For instance, this means that social distancing is not required in areas besides health care and patient care units. Id. Given these numbers and the facility operating at a COVID-19 Operational Level of 1, the court finds defendant has failed to establish extraordinary and compelling reasons that warrant compassionate release based on concerns arising from the potential of COVID-19 in the future.

Defendant's further basis for compassionate release is based on his family circumstances. ECF 39 at 5. In his motion, defendant argues that because his son "was placed in temporary

care of the State due to physical and mental abuse," compassionate release is warranted so he may care for his son. Id.

Generally, courts will "deny compassionate release when another suitable caregiver is available for the defendant's child." United States v. Barlow, No. 7:19-cr-00024-4, 2023 WL 2755598, at *3 (W.D. Va. Mar. 31, 2023); United States v. Lottier, No. 7:16-cr-030, 2020 WL 7233363 (W.D. Va. Dec. 7, 2020) (denying compassionate release when prisoner failed to show he was the only available or suitable caretaker for child); United States v. McKenzie, ---F.Supp.3d---, 2022 WL 14155663 (E.D. Tenn. Oct. 24, 2022) (denying compassionate release in part because record did not support the allegation that defendant's fiancée was child's only caregiver).

In this instance, defendant has failed to provide any evidence that his son is without a caregiver. In fact, defendant states in his motion that he "is now in the process of trying to get his son with his family." ECF 39 at 5. The presentence investigation report prepared by the probation office, indicates defendant has six living maternal half-siblings, with five of whom he maintains contact. ECF 33 at ¶ 68. The defendant fails to provide any evidence that none of these half-siblings nor any other relatives would be unable or

unavailable to care for his son.  Neither has he shown that his son's mother remains incapacitated to care for his son or that he would be eligible to assume custody of him.  The court finds defendant's family circumstances are not shown to be "extraordinary and compelling" reasons warranting compassionate release.

Defendant also seeks compassionate release based on his rehabilitation while incarcerated.  ECF 39 at 4.  Courts have found rehabilitation alone may not serve as a basis for compassionate release.  McCoy, 981 F.3d at 286, n. 9; Davis, No. 21-6960, 2022 WL 127900; 28 U.S.C. § 944(t).  Accordingly, to the extent defendant seeks compassionate release based on his rehabilitation, such request is denied.

Because the court finds that release is not warranted under § 3582(c), it need not address whether release would be consistent with the factors set forth in § 3553(a).

In light of the foregoing, the court DENIES defendant's motion for compassionate release.

The Clerk is directed to transmit copies of this order to the defendant, all counsel of record, the United States Probation Office, the United States Marshal, and to the Federal Bureau of Prisons.

ENTER: August 11, 2023

John T. Copenhaver, Jr.
Senior United States District Judge